Commonwealth ex rel. McCormick et al. *v.* Philadelphia and Reading Coal and Iron Company et al.

Argued June 30, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER, and STEARNE, JJ.

*Robert McCay Green*, City Solicitor, with him *Samuel Feldman* and *G. Coe Farrier*, Assistant City Solicitors, for petitioner, City of Philadelphia.

*Morris Gerber, H. Ober Hess, E. Arnold Forrest, C. Edmund Wells, Fred W. Deinenger, James M. Brittain, John P. Wanner, Julian W. Barnard* and *Claude B. Wagner*, for intervening plaintiffs.

*Penrose Hertzler, Arthur Littleton, William Clarke Mason, Samuel D. Matlack, William Jay Turner* and *William A. Schnader*, for defendants.

*Thomas C. Egan, Penrose Hertzler, Arthur Littleton, William Clarke Mason, Frank L. Pinola, Ralph M. Bashore, George H. Kaercher, James P. Bohorad, Walter Sidoriak, Howard J. Stutzman, Harry W. Lightstone, L. L. Frank, Joseph R. Sherman, Roy P. Hicks, Samuel D. Matlack, William Jay Turner*, and *William A. Schnader*, for intervening defendants.

OPINION BY MR. JUSTICE LINN, July 13, 1943:

On July 23, 1896, the City of Philadelphia, with the approval of the Attorney General, filed its bill against Philadelphia & Reading Coal & Iron Company and its Receivers, against Lehigh Coal & Navigation Company, three other corporations and a partnership,[1] complaining that, in the operation of their collieries in the Schuylkill River watershed, defendants had permitted coal-dirt and mine refuse to wash into and pollute the Schuylkill River and detrimentally affect the water supply of the City. The City asked that defendants be restrained "from depositing coal-dirt or refuse" in the river. Answers were filed. By agreement of the parties, Mr. Charles E. Morgan, Jr., was appointed referee, April 4,

---

[1] The referee found that no decree should be made against these three corporations or the partnership.

1899. He began taking testimony May 12, 1899. In his report, filed June 25, 1907, he stated: "Recently personal examinations of the operations of defendants were made by counsel for the complainants [City of Philadelphia] who have stated to the Referee, that they are satisfied that the defendants are now impounding and retaining most of the dirt deposited in their operations, and that the objects for which the bill of complaint was filed have been accomplished. Previous deposits, of course, in the river will from time to time be brought down by freshets, and this will continue until these deposits shall have been washed away . . .

"Inasmuch, however, as continued vigilance and care in the maintenance and use of the methods and machinery referred to will be required on the part of the defendants in the future and are essential to the performance of the obligations imposed upon them by law to prevent the pollution of the river, the Referee is of opinion that in order to provide for the protection in the future of the water supply of the city of Philadelphia the bill filed should be retained with liberty to the complainants to apply hereafter for such order by the Court as may be required."

The decree recommended by the referee was made by this court June 25, 1907, and, among other things, stated: ". . . that before the testimony was closed, evidence had been offered tending to show that further discharge of coal dirt, coal dust and refuse material into the Schuylkill river or its tributaries, by the said defendants, or either of them, had been effectually prevented; that although the filing of the Bill had been fully warranted, yet as the object of the suit had been accomplished, and the relief prayed for had been secured, it was not necessary that a restraining order be made, but it was reasonable and proper that the expenses and costs of the proceedings should be borne by the defendants, and in order that summary relief should be furnished to the city of Philadelphia in case at any time hereafter the

said defendants or either of them, should again permit such coal dirt, coal dust or refuse material to be negligently and wrongfully carried into the streams to the injury of the complainants, the bill should be retained, with liberty to the complainants to apply hereafter for such further order as the nature and circumstances of the case may require; it is thereupon, after due consideration of said report and with the consent of counsel representing both the complainants and defendants,

"ORDERED, ADJUDGED and DECREED, that said report be and is hereby confirmed. It is further ordered that the costs and expenses of the cause be apportioned among and paid by the defendants, the Philadelphia and Reading Coal and Iron Company, the Lehigh Coal and Navigation Company and the Silver Brook Coal Company, and the jurisdiction of the said cause be and is hereby retained, with liberty to either party upon short notice to apply for such further and other relief as the nature and circumstances of the case may require."

So the matter stood for nearly thirty-six years, that is, until May 15, 1943, when the City filed the petition, now before the court, praying that the defendants be restrained from depositing coal dirt or refuse on or near the banks of the Schuylkill River and its tributaries or otherwise polluting the water by their mining operations and that they ". . . and each of them be ordered to pay to the City of Philadelphia the cost of dredging the Schuylkill River and removing from the bed thereof the sedimentation deposited as herein averred." The petition also avers that the operations of defendants ". . . and others who should be added as defendants" had elevated the bed of the Schuylkill River ". . . to an extent ranging from four to fifteen feet in height . . ."

In accord with general practice in dealing with applications for summary relief, this court granted a rule to show cause, with leave to bring in other defendants referred to in the petition. The legal question now to be determined is whether the rule granted on the City's

petition should be made absolute as to any or all of the defendants or whether the rule should be discharged. The answer to the questions depends on (a) whether the application is within the terms of the decree of 1907 and (b) if it is, whether, after the long delay, principles of equity will permit granting the prayer of the petition.

The City has also filed a petition for a rule to show cause why an amended bill of complaint should not be filed in which ten municipalities located along the Schuylkill River are joined as intervening plaintiffs and twenty-two corporations, not originally parties defendant, are named as parties whom the City desires to bring in as defendants.

The Philadelphia & Reading Coal & Iron Company answered the petition by saying that it was a Debtor in possession of the property of said corporation pursuant to section 77 B of the Federal Bankruptcy Act and was subject to order entered on February 26, 1937, by the District Court of the United States for the Eastern District of Pennsylvania, restraining the prosecution or continuation of any suits against said debtor; leave to continue the prosecution of this suit had not been granted though the city had applied for such leave and that July 16, 1943, had been fixed for hearing on the application.

The Lehigh Coal & Navigation Company answered that since March 1, 1930, "it had ceased mining and that all mines formerly operated by it are now leased to other corporations and are operated if at all by the lessees; that none of the breakers or washeries operated by it in 1896 is being operated now but that all had long since been supplanted by more modern plants operated by other corporations or persons." The respondent answered further on the merits.

Defendants whom the City desired to add, moved to dismiss on the ground, inter alia, that as they were not in existence when the decree was entered in 1907, they could not be subject to its terms and that, on the contrary, they are entitled to trial in a plenary suit

brought against them to answer for any alleged wrongful conduct.

It will appear by examination of the City's petition and the amended bill which the City desired to file, that what the City now asks for is not only not within the terms of the decree of 1907 but is wholly outside of what was reserved or intended to be reserved. The decree, which was made with the City's express agreement, recited that ". . . the object of the suit had been accomplished, and the relief prayed for had been secured . . ." It is therefore a fact that the proceeding had determined the right of the City in the waters of the Schuylkill and the invasion of that right by the unlawful conduct of the defendants. Obviously, if the desired relief was obtained, the public nuisance was abated; there was nothing to restrain; defendants' liability was at that time discharged on payment of costs. The proceeding had been long and, we may assume, expensive;[2] the decree therefore contained a precautionary provision that ". . . summary relief should be furnished to the City of Philadelphia in case at any time hereafter the said defendants or either of them, should again permit" the recurrence of the nuisance. Summary proceeding, in such circumstances, means one initiated by motion for a rule to show cause why the status established by the suit should not be immediately restored and is therefore necessarily founded on the decree.

No reason has been alleged by the City why these additional defendants should be deprived of a plenary trial according to the accepted rules of equity practice and procedure and, instead, should be required to answer summary process.

We now have, then, an application by the City and ten intervening municipalities for summary relief against two of the original defendants and twenty-two addi-

---

[2] The printed record of the testimony alone contains over 800 pages.

tional corporate defendants who have come into existence in recent years; we all agree that such application is not within the terms of the decree of 1907. Having reached that conclusion, it is unnecessary to consider the effect of the long delay.

The rule is discharged; each party to bear its own costs.